IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | NO. 3-08-CV-1327-O |
| | § | NO. 3-06-CR-0369-O |
| RONALD C. PEARSON | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Ronald C. Pearson, a federal prisoner, has filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be dismissed without prejudice, but the judgment in the underlying criminal action should be reinstated so defendant may proceed with an out-of-time appeal.

I.

Defendant pled guilty to one count of receipt of child pornography through interstate and foreign commerce in violation of 18 U.S.C. § 2252A(a)(2). Punishment was assessed at 70 months confinement followed by a life-term of supervised release. No appeal was taken. Instead, defendant filed this motion under 28 U.S.C. § 2255.

II.

In one broad ground for relief, defendant contends that he received ineffective assistance of counsel because his attorney: (1) failed to object to a life-term of supervised release; (2) did not object to the length of his sentence or the court's failure to consider the section 3553(a) sentencing factors; (3) did not subpoena four key witnesses to testify at the sentencing hearing; and (4) failed

to appear with him for two different polygraph examinations. Defendant further alleges that his attorney failed to protect his appellate rights by filing a notice of appeal.

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). In order to obtain post-conviction relief due to ineffective assistance of counsel during the punishment phase of a non-capital case, a defendant must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. *Id.*, 104 S.Ct. at 2064-65. Second, the defendant must establish prejudice--that he was subjected to increased jail time due to the deficient performance of his attorney. *See United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004), *citing Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). The two prongs of the *Strickland* test need not be analyzed in any particular order. *See United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). If a defendant fails to satisfy either prong, his claim of ineffective assistance of counsel must fail. *Id.*

1.

Defendant pled guilty to one count of receipt of child pornography through interstate and foreign commerce. As part of the plea agreement, defendant admitted that:

> From on or about January 2006 up to and until November 16, 2006, Pearson regularly accessed the Internet using his computer located in his residence, and knowing and intentionally accessed and viewed Web sites that displayed images of minors engaged in sexually explicit conduct. On more than one occasion, Pearson knowingly and intentionally downloaded, or knowingly authorized other persons to download, over 600 images of minors engaged in sexually explicit

conduct from these sites to his computer. On more than one occasion, Pearson also knowingly and intentionally copied ("burned"), or knowingly authorized other persons to copy, over 600 of the images of minors engaged in sexually explicit conduct from his computer to CDs, DVDs, and other external media. The images downloaded and "burned" to CDs and DVDs included images of prepubescent children engaged in sexually explicit conduct.

(Gov't Resp. App., Exh. C at 3). Defendant also waived the right to appeal his conviction and sentence. (*Id.*, Exh. C at 8, ¶ 10). However, he reserved the right to appeal any sentence in excess of the statutory maximum punishment or an arithmetic error at sentencing, to challenge the voluntariness of his guilty plea, and to bring a claim of ineffective assistance of counsel. (*Id.*).

An examination of defendant's computer hard drive revealed more than 16,500 child pornographic images, including images of children under the age of 12 and more than 100 images involving bondage of infants, preschoolers, prepubescents, and early teenagers. (*Id.*, Exh. A at 7, ¶ 33). Under the sentencing guidelines in effect at the time, the base offense level for an offense involving the sexual exploitation of a minor was 22. *See* U.S.S.G. § 2G2.2(a)(2) (2005). Because of the specific characteristics of the offense, the base offense level was increased by a total of 13 points. (*See* Gov't Resp. App., Exh. A at 17, ¶¶ 49-52).[1] The original Presentence Investigation Report ("PSI") recommended that defendant receive a two-level reduction because his conduct was limited to the receipt or solicitation of child pornography, *see id.* § 2G2.2(b)(1), and a three-level reduction for acceptance of responsibility, *see id.* § 3E1.1(a) & (b), for a total offense level of 30, resulting in a sentencing range of 97-121 months. (*See id.*, Exh. A at 17, ¶ 57 & 23, ¶ 86). The government also filed a section 5K1.1 motion for downward departure based on substantial

---

[1] Section 2G2.2 of the Sentencing Guidelines provides for a two-level increase if the material depicts a prepubescent minor or a child under 12 years of age, *see* U.S.S.G. § 2G2.2(b)(2), a four-level increase if the material portrays sadistic or masochistic conduct or other depictions of violence, *see id.* § 2G2.2(b)(4), a two-level increase if a computer was used to receive or distribute the material, *see id.* § 2G2.2(b)(6), and a five-level increase if the offense involved 600 or more images, *see id.* § 2G2.2(b)(7)(D).

assistance provided by defendant. However, prior to sentencing, defendant violated the conditions of his pretrial release. As a result of that violation, an addendum to the PSI recommended against a three-level reduction for acceptance of responsibility. (*Id.*, Exh. A at 31-35). Without that reduction, the total offense level increased to 33, resulting in a sentencing range of 135-168 months. (*Id.*, Exh. A at 34, ¶ 57 & 35).

Two sentencing hearings were held in this case.[2] At the first hearing, the court heard from three character witnesses and Dr. Franklin Lewis, a psychologist specializing in sex offender treatment. No witnesses testified at the second hearing. After considering the evidence and objections to the PSI addendum, the court allowed a three-level reduction for acceptance of responsibility and granted the government's motion for downward departure, which lowered the total offense level to 26, resulting in a sentencing range of 63-78 months. (Sent. Tr., 12/20/07 at 5-6, 24). Before assessing punishment, the court heard from defendant, who asked for probation, and the prosecutor, who argued for a sentence in the guideline range. (*See id.* at 18-19). The court then sentenced defendant to 70 months confinement followed by a life-term of supervised release. (*Id.* at 26).

2.

In several related arguments, defendant faults his attorney for not objecting to the length of his sentence or a life-term of supervised release. These arguments are without merit. Under both federal statutory law and the sentencing guidelines, the term of supervised release for a sex offense involving a minor is between five years and life. *See* 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(b)(2). The policy statement in section 5D1.2(b) recommends a life term of supervised release if the offense

---

[2] The first sentencing hearing was held on October 26, 2007, before Senior U.S. District Judge Jerry Buchmeyer. The case was subsequently transferred to U.S. District Judge Reed C. O'Connor, who held a second sentencing hearing on December 20, 2007.

of conviction is a sex offense. *See* U.S.S.G. § 5D1.2(b). Reading the statute together with the policy statement indicates that Congress and the Sentencing Commission intended to impose life terms of supervised release in these cases due to "the high rate of recidivism in convicted sex offenders, especially child sex offenders." *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *see also United States v. Jones*, 289 Fed.Appx. 798, 2008 WL 3860976 at *1 (5th Cir. Aug. 19, 2008). Although defendant believes that a life-term of supervised release was not justified in this case, nothing in the record suggests that the court would have imposed a shorter term had counsel objected.

Nor is there any evidence that the court failed to consider the section 3553(a) sentencing factors or imposed an unreasonable sentence. To the contrary, the judge stated that "[i]n arriving at a reasonable sentence, I have taken into account primarily the conduct admitted by the defendant in the factual resume *and those matters required to be considered by 3553(a)*." (Sent. Tr., 12/20/07 at 25) (emphasis added). One of the section 3553(a) sentencing factors is the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Here, the evidence shows that defendant had more than 16,500 child pornographic images, including images of children under the age of 12 and more than 100 images involving bondage, on his computer hard drive. Despite this disturbing evidence and the fact that defendant violated the conditions of his pretrial release, the court granted the government's motion for a four-level downward departure and allowed a three-level reduction for acceptance of responsibility, which reduced defendant's potential sentence exposure from 135-168 months to 63-78 months. His 70-month sentence was well-within the guideline range and was more than reasonable under the circumstances. Counsel had absolutely no basis for objecting to the sentence.

3.

Defendant further alleges that this attorney was ineffective for failing to subpoena four key witnesses to testify at the sentencing hearing. According to defendant, these witnesses would have "shed light on [his] current mental state and propensity to reoffend." (*See* Def. Mem. Br. at 19). However, defendant does not identify these witness or proffer their missing testimony. Without this evidence, the court cannot begin to analyze a claim of ineffective assistance of counsel. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

4.

Similarly, defendant did not receive ineffective assistance of counsel because his attorney failed to appear with him for two different polygraph examinations. The government asked defendant to take a polygraph test to determine whether he had engaged in any sexual contact with a minor, as opposed to merely receiving child pornography. If defendant passed the test, the results would be used to support the government's motion for downward departure. It is true that defendant's attorney, Randy Taylor, failed to appear for either of two scheduled polygraph examinations. One time Taylor had a flat tire on the way to the testing location. The other time he got lost. Because his attorney was not present, defendant refused to take a polygraph test.

Even if Taylor was ineffective for not attending the scheduled polygraph examinations, defendant was not prejudiced thereby. The government filed a motion for a four-level downward departure notwithstanding defendant's refusal to take a polygraph test. Had the test been given, defendant would not have been entitled to a further sentence reduction. Nor is there any evidence that defendant would have passed the test. In an attempt to demonstrate prejudice, defendant points out that the prosecutor tried to impeach Dr. Franklin Lewis, the psychologist who testified on behalf of defendant at sentencing, with the absence of polygraph test results. Dr. Lewis testified on direct

examination that he had been treating defendant for the last 10 months. When asked by defense counsel to explain this treatment, Dr. Lewis responded:

> The course of treatment basically follows that recommended by the Texas Counsel [sic] on Sex Offender Treatment. It includes coming to therapy every week. They have to do such things as complete a sexual history, present their sexual history to group--when I say "to group" it's other sex offender people in sex offender treatment. They have to stand along the way.
>
> Oh, various assessments along the way, like polygraphs, penile plethysmographs, and anything else which I require in order to try to assess whether we are meeting treatment goals and objectives, and those treatment goals and objectives are basically outlined in the counseling and sex offender treatment.

(Sent. Tr., 10/26/07 at 14). On cross-examination, the prosecutor questioned Dr. Lewis about the specific tests administered to defendant as part of his treatment:

> Q. Have you administered a sex history polygraph to Mr. Pearson?
>
> A. No, I have not at this point.
>
> Q. Are you aware of whether one has been administered since his arrest?
>
> A. I'm not aware of one.
>
> Q. And am I also--am I correct that he has not also been administered, since his arrest, a penile plethysmograph?
>
> A. That's correct, sir.

(*Id.* at 17-18). It is clear from this colloquy that the polygraph referenced by the prosecutor and Dr. Lewis at the sentencing hearing was a test administered for the purpose of sex offender treatment. By contrast, the polygraph offered to defendant prior to sentencing was to be used to support the government's motion for downward departure. Contrary to defendant's argument, the prosecutor did

not attempt to impeach Dr. Lewis with the absence of results from the polygraph tests at which defense counsel failed to appear. Defendant is not entitled to relief on this ground.

B.

The court reaches a different conclusion with respect to defendant's claim that his attorney failed to protect his appellate rights by filing a notice of appeal. The Supreme Court has held that the failure of an attorney to file a notice of appeal when requested to do so is *per se* ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In such cases, the defendant need not establish that an appeal would be successful or even state the grounds on which he would have appealed. *Id.*, 120 S.Ct. at 1039-40, *citing Rodriquez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969). Instead, the defendant must only demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038. This standard applies even in cases where a defendant has waived the right to appeal his conviction and sentence. *See United States v. Tapp*, 491 F.3d 263, 265 (5th Cir. 2007) (citing cases).

At an evidentiary hearing held on December 4, 2008, the court heard testimony on this issue from defendant and his former attorney, Randy Taylor. Defendant testified that he met with Taylor immediately after sentencing and told him that he wanted to appeal. Taylor responded by telling defendant that he had waived his right to appeal as part of the plea agreement. Although Taylor acknowledged meeting with defendant after the sentencing hearing, he had no specific recollection about those discussions. Taylor vaguely recalled talking about the 70-month period of incarceration, but did not remember discussing an appeal. Later in his testimony, Taylor said that defendant never asked him to file a notice of appeal. Had such a request been made, Taylor testified that he would have quoted a fee to defendant. The only other evidence even remotely touching on this issue was

the testimony of Rex Smith, a long-time friend of defendant, who said that defendant told him before sentencing that "if it came to that, he wanted to appeal." Smith further testified that he saw defendant and Taylor arguing outside the courtroom after the sentencing hearing. Although Smith could not hear what was said, it appeared that defendant wanted Taylor to do something that Taylor did not want to do.

Despite the self-serving nature of his testimony, the court finds defendant to be the more credible witness. Not only was defendant's recollection of the post-sentencing meeting with Taylor less equivocal than that of his former attorney, but his testimony was partially corroborated by Smith. In addition, Taylor's demeanor at the evidentiary hearing suggests that he may not accurately remember events that occurred nearly a year ago. Taylor acknowledged that he suffers from a serious medical condition, cirrhosis of the liver, and is on a liver transplant list. He had difficulty hearing, understanding, and answering questions asked by the attorneys and the court. In light of this evidence, the court finds that defendant clearly indicated to Taylor his desire to appeal his sentence. Instead of protecting the right to appeal, Taylor erroneously advised defendant that he had no right to appeal because of the waiver in the plea agreement. This constitutes ineffective assistance of counsel and entitles defendant to an out-of-time appeal. *See Thompson v. United States*, No. 6-07-CV-100, 2008 WL 2008631 at *3 (E.D. Tex. May 8, 2008).

## RECOMMENDATION

Defendant is entitled to relief on the ground that his attorney failed to protect his appellate rights by filing a notice of appeal. The proper course of action to remedy this constitutional violation is to dismiss the section 2255 motion without prejudice and to reinstate the underlying criminal judgment to trigger anew the period for defendant to file an appeal. *See United States v. West*, 240 F.3d 456, 459-60 (5th Cir. 2001). Accordingly, the motion should be dismissed without prejudice

and the judgment in the underlying criminal action, No. 3-06-CR-369-O, should be reinstated so defendant may proceed with an out-of-time appeal. Defendant shall file a notice of appeal not later than 10 days after the re-entry of his criminal judgment. *See* FED. R. APP. P. 4(b)(1)(A).

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 10, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE